WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—May, 1887.

McCORD *v.* LOUNSBURY.

*In the matter of the application for probate of a paper propounded as the will of* WILLIAM ODELL, *deceased.*

Upon an application for probate, the evidence showed that the draftsman, L., after preparing the will, being requested by decedent to summon two neighbors to attest its execution, asked the latter to visit decedent, in order to witness "a paper," or "his will," it did not appear which ; that they accordingly attended, and were directed by L. to affix their names to a paper and at a place indicated by him, which they did, decedent having first subscribed it, the paper being so folded, at the time, as to conceal its contents from view ; that the attestation clause, appended thereto, was not read to or by the witnesses, of whom one did not remember that the character of the instrument was stated, while the other testified positively that the word "will" was not mentioned at the interview, although L. swore that he asked decedent, in the witnesses' presence, whether he wished them to witness his "last will and testament," and received an affirmative answer, which conversation, however, was not shown to have been heard by the witnesses.—

*Held*, that probate must be refused for want of due publication.

As to whether probate should be accorded to a paper, propounded as a will, consisting of a printed form, with insertions in the handwriting of proponent, and presenting a blank space of one and a half pages between the last disposing clause and the commencement of a paragraph appointing executors—*quære.*

THE facts of this case sufficiently appear in the opinion.

D. W. TRAVIS, *for proponent.*

STEPHEN LENT, *for William M. Barton, guardian ad litem.*

ROBERT McCORD, *for Mary E. McCord.*

THE SURROGATE.—A paper purporting to be a will

of William Odell deceased, bearing date in January, 1881, has been propounded for probate by George W. Lounsbury, one of the executors therein named. The deceased left, him surviving, his children Alonzo Odell, Mary E. McCord and Jackson Odell, and three minor children of his deceased daughter Louisa J. Tuttle whose husband, John M. Tuttle, is their general guardian. The special guardian contests the probate chiefly on the ground that the alleged will was not executed in accordance with the requirements of the statute, and especially, on the ground that there was not a sufficient publication of the instrument. It was prepared by George W. Lounsbury, the proponent, who seems to have supervised its execution. He used a blank form such as is sold by stationers. These forms, in the hands of unskilled laymen, often lead to difficulty and have frequently been condemned by the courts. In this instance there is a blank space of fully one and one half pages between the end of the last disposing clause and the commencement of the paragraph appointing executors. Thus an opportunity was furnished, to a fraudulently disposed person, to insert, after its formal execution, any other provisions an evil heart might suggest. Mr. Lounsbury had possession of the paper from the day of its date, until he produced it in court. It was, where written, in his handwriting, and thus the opportunity for the insertion of other provisions was presented; but his well known character for probity forbids the idea that he availed himself of it. This could scarcely be said of every one in his position, and hence, such risk should be avoided. What would the courts say of a

will entirely written, with such a blank space as we here find?  I am inclined to think they would deem it a sufficient ground for its rejection (Heady's will, 15 *Abb. Pr.*, *N. S.*, 211).

However this may be, there are other reasons why I think probate of the will should be refused.  The facts in regard to the preparation and execution of the paper are substantially these.  Mr. Lounsbury had been requested by the decedent to prepare a will. He accordingly went to his house, and after conferring with him, asked whom he would have for witnesses, when decedent spoke of Mr. Lent and his wife. Lounsbury then went for them, stating to James H. Lent that he wished them to go to Mr. Odell's to witness a paper, or his will.  Neither Lounsbury nor Lent can say which expression was used.  Arrived at the house, Lent says, " Lounsbury walked to the table where some papers lay and asked me to sign my name at such a place, mentioning where it was.  I did so.  I believe that was all that was said before I signed my name, but don't remember.  After I signed my name I stepped back, and Mr. Odell spoke upon some ordinary subject, and I left after staying some three or four minutes.  That is all that took place, except my wife signed her name immediately after I did, and that was all that was said in her hearing or presence.  Mr. Odell first signed his name."  No portion of the will nor any part of the paper was read by or to the witnesses.  Mr. Lent further says that he did not remember that either Mr. Odell or Mr. Lounsbury said what the paper was, and that he signed it at the request of the latter.  Mrs. Lent testifies that she

went with her husband to Mr. Odell's, saw him sign the paper, that then Lounsbury showed her and her husband where to sign their names, and they signed accordingly. She swears positively that the word "will" or any equivalent word was not used while she was there, or, if used, that she did not hear it, that she would have heard it, if it had been uttered.

Mr. Lounsbury testifies that he went with the witnesses to Mr. Odell's house, and that, when they went in, he asked the decedent: "do you want Mr. Lent and his wife to be witnesses to your last will and testament?" and he said "yes"; that the paper was so folded that no part of the contents preceding the words "to be executors" was visible. Then decedent signed it, and he showed the witnesses where to sign. This is the substance of the testimony, so far as it is material upon the point in question.

There is no evidence of the size of the room, or the relative positions of the actors, the tone of voice of Mr. Lounsbury when putting the alleged question to the testator, and other like details calculated to aid in the solution of the question. The witnesses are all above the usual average of intelligence, and of unquestionably good character. It is quite evident to my mind that either Mr. Lounsbury is mistaken in regard to his having put the question to the decedent as testified to by him, or that it was put in such a manner as to fail to catch the attention of the subscribing witnesses. Mr. Lent does not remember hearing the word "will" used, and his wife testifies positively that it was not used in her hearing; and I believe her statement.

The statute wisely requires a publication of the nature of the instrument, to the subscribing witnesses, as a safeguard against fraud.  If there be no such publication the instrument cannot be regarded as a will.   None of the numerous cases relating to the question here presented controvert this position. All the attention is directed to the simple question, was there such a publication made, in view of all the attendant facts and circumstances.   Wills have been held validly executed where the witnesses' memory has failed as to publication, or request to sign, when satisfactory evidence of others shows that the statute was complied with in these respects, and so also in certain extreme cases, against the positive evidence of the witnesses, where their honesty was seriously questioned and they discredited.   But where the attestation clause was not read to or by the witnesses, as in this case, and where one fails to recollect publication and the other testifies positively against it, I think the will should be refused probate, although another person present testify to such publication, but fails to show that it could have been heard by the witnesses. If one did not hear it, it was not published to both, as the statute requires, and the paper does not become a will.

Probate refused accordingly.   The costs of this proceeding must be paid out of the estate, by the administrator when appointed.